**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| STACIE BASS, CAROLINE CULP, KRISTEN DESTEPHANO, JULIA GREER, DANIELLE LARSON, ERIN LEONARD, DEANA LOZANO, SHANNON MAINES, AMANDA MESSER, ALIZA MOR, MARISSA STEWART, MARY BETH TEW, and COURTNEY WEYMOUTH, *individually and on behalf of all those similarly situated*, | ) No. 4:21-cv-00307-JAJ-HCA ) ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) ) ) ) |
| *Plaintiffs*, | ) ) |
| *v.* | ) ) |
| BOWMAR NUTRITION, LLC, *an Iowa limited liability company*, | ) ) ) |
| *Defendant*. | ) ) ) |

_____

**SECOND AMENDED CLASS ACTION COMPLAINT**

1. Millions of Americans use protein supplements and food replacements derived from whey protein to meet weight loss, fitness, and health goals. These consumers carefully monitor their protein intake for maximum effectiveness in meeting these goals. The accuracy of nutritional labels identifying the protein content of these products is therefore centrally important to satisfying these consumers' needs and expectations.

2. Diet supplements and food replacement items fortified with whey protein are available—at a premium price—from Defendant Bowmar Nutrition, LLC ("Bowmar"). The whey protein-fortified products manufactured by Bowmar include various flavors of powders, frostings, nut spreads, and bars (as well as other foods not at issue in this case) whose protein content is fortified with whey protein concentrate and/or isolate.

3.      But Defendant's whey protein-fortified nut spreads, powders, bars, and frostings provide *substantially less* protein than is stated on the federally mandated nutritional label and represented on Defendant's website and social media advertising. The labels and advertising claims were false, inaccurate, and misleading, and the labels and advertising violate federal and state laws and regulations requiring accuracy in nutritional labels.

4.      Thousands of consumers, including the Plaintiffs in this case, purchased Bowmar's whey protein-fortified nut spreads, powders, bars, and frostings, relying on the company's marketing and labelling claims about the protein content in those products. Defendant reaped millions of dollars in profits from these consumers, who received inadequate products sold under false pretenses.

5.      Under the laws of the states of Iowa (and every other state), Defendant has engaged in unfair and deceptive trade practices, sold goods under false pretenses, and defrauded its customers of the benefit of their bargain. This Court should enter a declaratory judgment finding that Defendant violated the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.1 *et seq.*, as well as other state statutes and laws cited herein, and award damages and grant equitable and other relief to the extent permitted by law.

## PARTIES

6.      Plaintiff Stacie Bass is, and at all times relevant has been, a resident of Katy, Texas.

7.      Plaintiff Caroline Culp is, and at all times relevant has been, a resident of Hoboken, New Jersey.

8.      Plaintiff Kristen DeStephano is, and at all times relevant has been, a resident of Norfolk, Virginia.

9.      Plaintiff Julia Greer is, and at all times relevant has been, a resident of Navarre, Florida.

10.     Plaintiff Danielle Larson is, and at all times relevant has been a resident of Madison, Wisconsin.

11.     Plaintiff Erin Leonard is, and at all times relevant has been, a resident of Charlotte, North Carolina.

12.     Plaintiff Deana Lozano is, and at all times relevant has been, a resident of Los Angeles, California.

13.     Plaintiff Shannon Maines is, and at all times relevant has been, a resident of Lockport, New York.

14.     Plaintiff Amanda Messer is, and at all times relevant has been, a resident of Rochelle, Illinois.

15.     Plaintiff Aliza Mor is, and at all times relevant has been, a resident of Highland Park, Illinois.

16.     Plaintiff Marissa Stewart is, and at all times relevant has been, a resident of Topeka, Kansas.

17.     Plaintiff Mary Beth Tew is, and at all times relevant has been, a resident of Winston-Salem, North Carolina.

18.     Plaintiff Courtney Weymouth is, and at all times relevant has been, a resident of East Wakefield, New Hampshire.

19.     Defendant Bowmar Nutrition, LLC is an Iowa limited liability company with its principal place of business in Ankeny, Iowa.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original

jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

21.     Plaintiffs are citizens of states different from defendant and seek to represent other Class members who are citizens of states different from the Defendant.

22.     On information and belief, all of the members of Bowmar Nutrition, LLC reside in or are domiciled in the state of Iowa.

23.     The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

24.     In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

25.     Alternatively, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

26.     This Court has personal jurisdiction over Defendant because Defendant is an Iowa limited liability company with its principal place of business in this state.

27.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

28.     Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over defendant.

## FACTUAL ALLEGATIONS

**A.    Bowmar Sells a Line of Powders, Frostings, Bars, and Nut Butters Fortified With Distinct Forms of Protein Derived From Whey.**

29.    Millions of Americans use protein powders and replacement foods to supplement their diet, reduce appetite, and gain muscle. Consumers of protein supplements and other replacement foods carefully measure their protein intake to maximize muscle growth and achieve the most efficient results from their workout and exercise programs. Protein supplements derived from a variety of protein sources are currently available for purchase.

30.    The global protein supplements market size was valued at $18.91 billion in 2020 and is expected to grow at a compound annual growth rate of 8.4 percent from 2021 to 2028. *See* https://www.grandviewresearch.com/industry-analysis/protein-supplements-market.

31.    Millions of Americans are also practitioners of one of a family of high-protein, low-carb eating plans, including the keto, Atkins, South Beach, Protein Powder, and paleo diets. To follow these plans, practitioners carefully count their intake of three macronutrients, or "macros"—fat, protein, and carbohydrates—aiming for precise intake amounts. These diets are designed to put the body into a metabolic state where it becomes highly efficient at burning fat. Many of these eating plans are also used by diabetics to maintain healthy blood sugar levels.

32.    These eating plans all require practitioners to count and track their macros carefully. Eating too much or too little of a macro can take a person out of the desired efficient metabolic state. That is, macro-counting is an "on/off" process—getting 80 percent of the desired macro does not mean a practitioner gets 80 percent of the expected benefit, but something much closer to zero percent.

33.    As such, practitioners of these eating plans carefully scrutinize the nutritional content labels and nutrient content claims of the foods they eat, in order to not over- or under-

consume a particular macro. If those labels are inaccurate, a person following the eating plan will not be able to achieve the weight loss, blood sugar maintenance, and other benefits that are sought.

34.     Bowmar Nutrition manufactures, formulates, and/or distributes *inter alia* a line of nut spreads, frostings, bars, and powders that are fortified with whey protein concentrate and isolate. These whey protein-fortified products are designed for use by persons following these high-protein eating plans, or who are generally concerned about obtaining adequate protein and want to replace comparable food products with high-protein alternatives. Bowmar explicitly advertises these whey protein-fortified products for use in the high-protein eating plans described above.

35.     Whey is the liquid byproduct that remains after milk solids are removed to make cheese. Whey is distinct from other forms of protein that are commonly used in supplements, such as protein derived from plants or egg whites.

36.     Whey protein-fortified powders are generally made with three forms of whey, which are the products of distinct processes. Whey concentrate is a dried, powderized form of whey. Whey hydrolysate is processed whey concentrate with the protein chains broken down; it is often used in infant formulas. Whey isolate is whey concentrate that is processed to reduce its fat and lactose content, leaving nearly pure protein. This purity makes protein supplements made with whey isolate highly valued among performance athletes and persons using protein supplements to lose weight. Whey protein isolate is especially useful to persons who are lactose intolerant, because the lactose in the dairy is removed. For this reason, protein powders that include whey protein isolate often sell at a premium price.

37.     Bowmar's whey protein-fortified powders and food replacement items are made with whey isolate and/or whey concentrate.

38.     Bowmar also sells other protein-fortified products derived from egg whites and from plant sources such as pea isolate. These products are not substantially similar to the whey protein-fortified nut spreads, powders, and frostings purchased by Plaintiff, as they are fortified with protein derived from substantially different sources and that undergo substantially different processes.

39.     The whey protein-fortified nut spreads, powders, bars, and frostings purchased by Plaintiffs and other consumers are repeatedly advertised on the Bowmar website as being "high protein." *See, e.g.*, https://bowmarnutrition.com/products/bowmar-almond-butter.[1]

40.     On the front labels of its whey protein-fortified nut spreads, powders, bars, and frostings, Bowmar Nutrition advertises these products as providing specific amounts of protein per serving. These protein claims are repeated on the "Nutrition Facts" portion of the products' labels. They are also repeated on the individual product pages on Bowmar's e-commerce website.

41.     Bowmar Nutrition also claims that its whey protein-fortified nut spreads, powders, bars, and frostings provide a number of health benefits, including serving as "a healthy meal replacement with a range of amino acids to stimulate muscle growth," https://bowmarnutrition.com/products/protein-pumpkin-spice, being "high in protein, which makes it perfect for those looking to reduce body fat levels and build muscle," https://bowmarnutrition.com/collections/whey-protein/products/protein-hazelnut-coffee, or helping to reduce caloric intake because their high protein content will "fill[ ] you up," https://bowmarnutrition.com/products/protein-bars.

---

[1] All citations to the Bowmar Nutrition website are accurate and reflect the content of that site as of September 26, 2021.

42.     Defendant has a duty under Federal law to state the nutritional content of its products accurately on its labels and in its marketing materials. All of these representations also constitute an express warranty regarding Bowmar's products' protein content.

**B.     Plaintiffs Purchased Whey Protein-Fortified Powders in Reliance on Bowmar's False Statements Concerning Grams of Protein Per Serving.**

43.     Through Bowmar's website, Plaintiffs purchased a number of Bowmar's whey protein-fortified powders, including but not limited to those listed below. Bowmar's whey protein-fortified powders are made with both whey protein concentrate and whey protein isolate.

44.     Plaintiff Stacie Bass purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Birthday Cake | 11/30/2020 | $69.99 | 22 |
| Whey Protein - Hot Chocolate | 11/26/2020 | $64.99 | 23 |
| Whey Protein - Pumpkin Spice | 11/26/2020 | $69.99 | 22 |
| Whey Protein - Hot Chocolate | 9/20/2020 | $69.99 | 23 |
| Whey Protein - Hot Chocolate | 8/22/2020 | $69.99 | 23 |
| Whey Protein - Hot Chocolate | 8/22/2020 | $66.49 | 23 |
| Whey Protein - Frosted Cookie | 7/31/2020 | $69.99 | 22 |
| Whey Protein - Birthday Cake | 6/5/2020 | $57.49 | 22 |
| Whey Protein - French Toast | 6/5/2020 | $57.49 | 22 |
| Whey Protein - Hot Chocolate | 5/15/2020 | $57.49 | 23 |
| Whey Protein - Dulce de Leche | 3/6/2020 | $57.49 | 22 |
| Whey Protein - Cookies and Cream | 7/24/2019 | $69.99 | 22 |

46.     Plaintiff Caroline Culp purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Fruity Cereal | 10/16/2020 | $29.99 | 22 |
| Whey Protein - Strawberry Shake | 10/16/2020 | $29.99 | 22 |
| Whey Protein - Caramel Apple | 8/4/2020 | $19.49 | 22 |
| Whey Protein - Dulce de Leche | 6/17/2020 | $19.49 | 22 |
| Whey Protein - Cookies and Cream | 5/19/2020 | $69.99 | 22 |
| Whey Protein - Frosted Cookie | 5/19/2020 | $28.69 | 22 |
| Whey Protein - Hazelnut Coffee | 5/19/2020 | $28.69 | 22 |
| Whey Protein - Mint Chocolate Chip | 5/19/2020 | $28.69 | 22 |
| Whey Protein - Pumpkin Spice | 5/19/2020 | $34.99 | 22 |
| Whey Protein - Wedding Cake | 5/19/2020 | $28.69 | 22 |

47.     Plaintiff Kristen DeStephano purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Birthday Cake | 8/20/2021 | $2.25 | 22 |
| Whey Protein - Wedding Cake | 6/25/2021 | $2.25 | 22 |
| Whey Protein - Birthday Cake | 6/11/2021 | $34.99 | 22 |
| Whey Protein - Hot Chocolate | 5/7/2021 | $2.25 | 23 |
| Whey Protein - Strawberry Shake | 5/7/2021 | $34.99 | 22 |
| Whey Protein - Cookies and Cream | 4/24/2021 | $69.99 | 22 |
| Whey Protein - Wedding Cake | 4/24/2021 | $2.25 | 22 |
| Whey Protein - Blueberry Cheesecake | 4/23/2021 | $2.25 | 22 |
| Whey Protein - Wedding Cake | 4/23/2021 | $34.99 | 22 |
| Whey Protein - Birthday Cake | 4/9/2021 | $69.99 | 22 |
| Whey Protein - Strawberry Shake | 4/9/2021 | $69.99 | 22 |

48.     Plaintiff Julia Greer purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Dulce de Leche | 8/12/2020 | $32.39 | 22 |
| Whey Protein - Egg Nog | 8/12/2020 | $39.19 | 22 |
| Whey Protein - Dulce de Leche | 6/20/2019 | $34.99 | 22 |

49.     Plaintiff Danielle Larson purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Pumpkin Spice | 2/4/2021 | $2.03 | 22 |
| Whey Protein - Pumpkin Spice | 2/4/2021 | $2.03 | 22 |
| Whey Protein - Pumpkin Spice | 2/4/2021 | $2.03 | 22 |
| Whey Protein - Hot Chocolate | 7/29/2020 | $1.80 | 23 |

50.     Plaintiff Erin Leonard purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Cotton Candy | 10/28/2019 | $34.99 | 22 |

51.     Plaintiff Deana Lozano purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Hazelnut Coffee | 2/22/2019 | $69.99 | 22 |
| Whey Protein - Hazelnut Coffee | 4/28/2019 | $34.99 | 22 |
| Whey Protein - Hazelnut Coffee | 5/27/2019 | $69.99 | 22 |
| Whey Protein - Pumpkin Spice | 8/12/2019 | $34.99 | 22 |
| Whey Protein - Hazelnut Coffee | 2/18/2021 | $64.99 | 22 |
| Whey Protein - Hazelnut Coffee | 2/18/2021 | $64.99 | 22 |

52.     Plaintiff Shannon Maines purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Cookies and Cream | 7/31/2020 | $2.25 | 22 |
| Whey Protein - Key Lime Pie | 7/24/2019 | $34.99 | 22 |

53.     Plaintiff Amanda Messer purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Birthday Cake | 6/30/2021 | $34.99 | 22 |
| Whey Protein - Birthday Cake | 5/14/2021 | $29.99 | 22 |
| Whey Protein - Pumpkin Spice | 5/14/2021 | $29.99 | 22 |
| Whey Protein - Banana Split | 4/9/2021 | $29.99 | 22 |
| Whey Protein - Frosted Cookie | 4/9/2021 | $29.99 | 22 |
| Whey Protein - Frosted Cookie | 3/16/2021 | $34.99 | 22 |
| Whey Protein - Hot Chocolate | 3/16/2021 | $34.99 | 23 |
| Whey Protein - Hot Chocolate | 2/2/2021 | $31.49 | 23 |
| Whey Protein - Wedding Cake | 2/2/2021 | $34.99 | 22 |
| Whey Protein - Wedding Cake | 11/19/2020 | $34.99 | 22 |
| Whey Protein - Carrot Cake | 7/24/2020 | $34.99 | 22 |
| Whey Protein - Strawberry Shake | 6/18/2020 | $34.99 | 22 |

| Whey Protein - Frosted Cookie | 5/20/2020 | $34.99 | 22 |
|---|---|---|---|
| Whey Protein - Hot Chocolate | 5/20/2020 | $34.99 | 23 |
| Whey Protein - Cookies and Cream | 4/9/2020 | $34.99 | 23 |
| Whey Protein - Birthday Cake | 2/14/2020 | $34.99 | 22 |
| Whey Protein - Mint Chocolate Chip | 2/14/2020 | $34.99 | 22 |
| Whey Protein - Strawberry Shake | 2/14/2020 | $34.99 | 22 |
| Whey Protein - Strawberry Shake | 2/14/2020 | $34.99 | 22 |
| Whey Protein - Vanilla Bean | 11/13/2019 | $39.99 | 22 |
| Whey Protein - Vanilla Bean | 8/11/2019 | $39.99 | 22 |
| Whey Protein - Hot Chocolate | 7/7/2019 | $39.99 | 23 |
| Whey Protein - Vanilla Bean | 7/7/2019 | $39.99 | 22 |
| Whey Protein - Wedding Cake | 7/7/2019 | $29.99 | 22 |

54.   Plaintiff Aliza Mor purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Hot Chocolate | 3/12/2021 | $69.99 | 23 |
| Whey Protein - Hot Chocolate | 1/29/2021 | $55.99 | 23 |
| Whey Protein - Hot Chocolate | 12/18/2020 | $55.99 | 23 |
| Whey Protein - Hot Chocolate | 12/18/2020 | $69.99 | 23 |
| Whey Protein - Hazelnut Coffee | 11/27/2020 | $69.99 | 22 |
| Whey Protein - Hazelnut Coffee | 4/6/2020 | $69.99 | 22 |
| Whey Protein - Hazelnut Coffee | 8/16/2019 | $69.99 | 22 |
| Whey Protein - Hot Chocolate | 4/22/2019 | $69.99 | 23 |
| Whey Protein - Frosted Cookie | 3/13/2019 | $47.99 | 22 |

55.   Plaintiff Marissa Stewart purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Frosted Cookie | 5/6/2021 | $69.99 | 22 |
| Whey Protein - French Toast | 11/26/2020 | $34.99 | 22 |
| Whey Protein - Strawberry Shake | 11/26/2020 | $34.99 | 22 |
| Whey Protein - Hot Chocolate | 11/5/2019 | $34.99 | 23 |

56.     Plaintiff Courtney Weymouth purchased the following flavors of powders from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Whey Protein - Frosted Cookie | 3/26/2021 | $69.99 | 22 |
| Whey Protein - Hot Chocolate | 1/29/2021 | $69.99 | 23 |
| Whey Protein - Vanilla Bean | 1/29/2021 | $39.99 | 22 |
| Whey Protein - Hot Chocolate | 1/15/2021 | $64.99 | 23 |
| Whey Protein - Birthday Cake | 12/7/2020 | $69.99 | 22 |
| Whey Protein - Blueberry Cheesecake | 11/10/2020 | $34.99 | 22 |
| Whey Protein - Cookies and Cream | 11/10/2020 | $69.99 | 22 |
| Whey Protein - Birthday Cake | 10/19/2020 | $69.99 | 22 |
| Whey Protein - Cookies and Cream | 8/20/2020 | $69.99 | 22 |
| Whey Protein - Hazelnut Coffee | 8/20/2020 | $69.99 | 22 |
| Whey Protein - Birthday Cake | 7/31/2020 | $69.99 | 22 |
| Whey Protein - Wedding Cake | 6/17/2020 | $34.99 | 22 |
| Whey Protein - Birthday Cake | 5/4/2020 | $69.99 | 22 |
| Whey Protein - Frosted Cookie | 5/4/2020 | $69.99 | 22 |
| Whey Protein - Birthday Cake | 2/28/2020 | $69.99 | 22 |
| Whey Protein - Birthday Cake | 2/28/2020 | $69.99 | 22 |
| Whey Protein - Cookies and Cream | 2/28/2020 | $69.99 | 22 |
| Whey Protein - Birthday Cake | 6/17/2019 | $69.99 | 22 |
| Whey Protein - Birthday Cake | 4/2/2019 | $69.99 | 22 |
| Whey Protein - Pancakes and Syrup | 4/2/2019 | $34.99 | 22 |
| Whey Protein - Cookies and Cream | 6/14/2018 | $34.99 | 22 |

57.     Plaintiffs reviewed and relied upon the claims made by Bowmar about the protein content of its whey protein-fortified powders before purchasing them. Plaintiffs specifically

SECOND AMENDED CLASS ACTION COMPLAINT

reviewed Bowmar's claims on its website and the front and back labels of the products about the per-serving protein content of its whey protein-fortified powders before making the decision to purchase. In making the decision to purchase, Plaintiffs relied on those label and website statements by Bowmar concerning the per-serving protein content of its whey protein-fortified powders.

58.     Given the Defendant's advertising material and other assurances, consumers including Plaintiffs reasonably understood Defendant's statements to mean that each serving of whey protein-fortified powders contained the grams of protein per serving that were advertised and represented. Plaintiffs believed that these statements were true.

59.     In fact, each of Bowmar's statements concerning the grams of protein per serving in its whey protein-fortified powders on the products' labels and on the Bowmar website were false at the time they were made and at the time Plaintiffs purchased the powders. Testing performed by reputable national laboratories establishes that each whey protein-fortified powder manufactured by Bowmar, including but not limited to those purchased by Plaintiffs, have shortfalls of grams of protein per serving of at least 10 percent of the stated value, up to 67 percent.

60.     Consumers, including Plaintiffs, reasonably relied on Defendant's statements such that they would not have purchased Bowmar's whey protein-fortified powders if the truth about their protein content were known, or would have only been willing to pay a substantially reduced price for them. Plaintiffs will be unable to rely on Bowmar's advertising or labeling in the future, and so will not purchase whey protein-fortified powders from Bowmar although they would like to.

61.     Plaintiffs suffered economic injury by Bowmar's fraudulent and deceptive conduct, and there is a causal nexus between Bowmar's deceptive conduct and Plaintiffs' injury as stated herein.

62.     Consumers including Plaintiffs did not become aware that Bowmar's labels and marketing materials misrepresented the protein content of its whey-fortified powders until mid-2020, when reports began to appear on the Internet and in other publications that consumer advocates had tested the Products and discovered the protein shortages.

63.     Consumers such as Plaintiffs are under no obligation to investigate the nutrient content values stated on the Products' labels before making their purchase and are entitled to rely on those statements. Prior to the reports in mid-2020, therefore, consumers including Plaintiff could not have determined, simply by reviewing the Products' labels or consuming the Products, that the labels and marketing materials were false and deceptive.

64.     All flavors of the whey protein-fortified powders sold by Bowmar are substantially similar to the whey protein-fortified powders purchased by Plaintiffs. (Bowmar's full line of whey protein-fortified powders can be found at https://bowmarnutrition.com/collections/whey-protein.) All of these protein powders are fortified with the same ingredients, *i.e.*, whey protein derived from cow's milk. The whey proteins used in these powders has undergone the same pasteurizing, drying, and separation processes.

65.     All flavors of the whey protein-fortified powders sold by Bowmar are also substantially similar in terms of the grams of protein per serving stated on the products' labels and the Bowmar website: all purportedly contain either 22 grams of protein per serving or 23 grams of protein per serving.

66.     All flavors of the whey protein-fortified powders sold by Bowmar also contain similar ingredients besides the whey protein, including preservatives and stabilizers such as Xanthum gum, Sucralose, and Acesulfame Potassium.

67.     All flavors of Bowmar's whey protein-fortified powders are offered for sale at the same price of $34.99 for one pound, $39.99 for two pounds, or $69.99 for five pounds. (The prices actually paid by individual consumers are in some cases reduced by sales and other discounts.) That is, the price of these powders is not driven in any way by the flavor of the powders, but instead is driven by the amount of powder and by extension the amount of whey protein in the product.

68.     All flavors of Bowmar's whey protein-fortified powders prominently highlight the use of "100% Whey Protein"; use similar labelling; come in standard 16-, 28-, and 75-servings sizes; and present the grams-per-serving protein claims in the exact same way, as these examples drawn from the Bowmar website show:











69.     The only distinction between the various flavors of whey protein-fortified powders sold by Bowmar is the inclusion of flavoring agents such as cinnamon powder, spray-dried coffee, cocoa with alkaline, and other natural and artificial flavorings. These ingredients provide flavor but do not affect or otherwise impact the essential characteristic of these powders, which is that they are fortified with whey protein that is designed to replace meals for athletes and persons hoping to lose weight or build muscle.

70.     In addition, all of the whey protein-fortified powders sold by Bowmar show consistent shortfalls in the stated grams of protein per serving. That is, Bowmar made substantially similar false statements about all of its whey protein-fortified powders on those products' labels and on its website.

71.     Because of these similarities, the resolution of the asserted claims will be identical as between the purchased and unpurchased whey protein-fortified powders.

72.     Because both the products and alleged misrepresentations are substantially similar, Plaintiffs' claims related to the whey protein-fortified powders that they purchased are typical of the claims available to all purchasers of Bowmar's whey protein-fortified powders. As such, Plaintiffs are adequate class representatives for a putative class of purchasers of all of Bowmar's whey protein-fortified powders, regardless of whether each Plaintiff purchased every flavor of Bowmar's whey protein-fortified powders.

**C.     Plaintiffs Purchase Whey Protein Isolate-Fortified Frostings in Reliance on Bowmar's False Statements Concerning Grams of Protein Per Serving.**

73.     Through Bowmar's website, Plaintiffs purchased a number of Bowmar's whey protein-fortified frostings, including but not limited to the frostings listed below. Both the products' front and back labels and the Bowmar website state that all of these frostings contain 10 grams of protein (derived from whey protein isolate) per serving.[2]

74.     Plaintiff Stacie Bass purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
| --- | --- | --- | --- |
| Frosting - Confetti Cake | 5/3/2019 | $9.99 | 10 |

---

[2] https://bowmarnutrition.com/products/protein-frosting?variant= 32547932045358

75.     Plaintiff Caroline Culp purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Frosting - Confetti Cake | 5/19/2020 | $9.99 | 10 |
| Frosting - Confetti Cake | 5/19/2020 | $9.99 | 10 |
| Frosting - Cream Cheese | 9/18/2019 | $9.99 | 10 |
| Frosting - Cream Cheese | 9/18/2019 | $9.99 | 10 |

76.     Plaintiff Kristen DeStephano purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Frosting - Cream Cheese | 6/25/2021 | $9.99 | 10 |

77.     Plaintiff Julia Greer purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Frosting - Confetti Cake | 8/5/2020 | $8.99 | 10 |

78.     Plaintiff Danielle Larson purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Frosting - Cream Cheese | 2/4/2021 | $8.99 | 10 |
| Frosting - Confetti Cake | 11/17/2020 | $8.99 | 10 |
| Frosting - Confetti Cake | 9/19/2019 | $8.99 | 10 |
| Frosting - Cream Cheese | 11/17/2019 | $8.99 | 10 |

79.     Plaintiff Deana Lozano purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Frosting - Confetti Cake | 3/7/2021 | $9.99 | 10 |

80.     Plaintiff Shannon Maines purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Frosting - Confetti Cake | 7/31/2020 | $9.99 | 10 |
| Frosting - Confetti Cake | 7/31/2020 | $9.99 | 10 |

81.     Plaintiff Amanda Messer purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Frosting - Confetti Cake | 1/17/2020 | $9.99 | 10 |
| Frosting - Cream Cheese | 1/17/2020 | $9.99 | 10 |

82.     Plaintiff Aliza Mor purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---------|------|-----------|---------------------------|
| Frosting - Confetti Cake | 4/22/2019 | $9.99 | 10 |
| Frosting - Confetti Cake | 3/29/2019 | $9.99 | 10 |
| Frosting - Cream Cheese | 11/23/2018 | $9.99 | 10 |
| Frosting - Cream Cheese | 11/1/2018 | $9.99 | 10 |

83.     Plaintiff Marissa Stewart purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---------|------|-----------|---------------------------|
| Frosting - Confetti Cake | 5/17/2019 | $8.99 | 10 |

84.     Plaintiff Courtney Weymouth purchased the following flavors of frostings from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---------|------|-----------|---------------------------|
| Frosting - Confetti Cake | 2/28/2020 | $9.99 | 10 |

85.     Plaintiffs reviewed and relied upon the claims made by Bowmar about the protein content of its whey protein isolate-fortified frostings before purchasing them. Plaintiffs specifically reviewed Bowmar's claims on its website and the front and back labels of the products about the

per-serving protein content of its whey protein isolate-fortified frostings before making the decision to purchase. In making the decision to purchase, Plaintiffs relied on those label and website statements by Bowmar concerning the per-serving protein content of its whey protein-fortified frostings.

86.     Given the Defendant's advertising material and other assurances, consumers including Plaintiffs reasonably understood Defendant's statements to mean that each serving of whey protein-fortified frosting contained the grams of protein per serving that were advertised and represented and believed that these statements were true.

87.     In fact, each of Bowmar's statements concerning the grams of protein per serving in the whey protein-fortified frosting on the product's labels and on the Bowmar website were false at the time they were made and at the time Plaintiff purchased the frosting. Each frosting manufactured by Bowmar, including but not limited to those purchased by Plaintiffs, have shortfalls of grams of protein per serving of up to 50 percent.

88.     Consumers, including Plaintiffs, reasonably relied on Defendant's statements such that they would not have purchased Bowmar's whey protein isolate-fortified frostings if the truth about their protein nutrient content were known, or would have only been willing to pay a substantially reduced price for them. Plaintiffs will be unable to rely on Bowmar's advertising or labeling in the future, and so will not purchase whey protein isolate-fortified frostings from Bowmar although they would like to.

89.     Plaintiffs suffered economic injury by Bowmar's deceptive conduct, and there is a causal nexus between Bowmar's fraudulent and deceptive conduct and Plaintiffs' injury as stated herein.

90.     Consumers including Plaintiffs did not become aware that Bowmar's labels and marketing materials misrepresented the protein content of its whey isolate-fortified frostings until mid-2020, when reports began to appear on the Internet and in other publications that consumer advocates had tested the Products and discovered the protein shortages.

91.     Consumers such as Plaintiffs are under no obligation to investigate the nutrient content values stated on the Products' labels before making their purchase and are entitled to rely on those statements. Prior to the reports in mid-2020, therefore, consumers including Plaintiff could not have determined, simply by reviewing the Products' labels or consuming the Products, that the labels and marketing materials were false and deceptive.

92.     All flavors of the whey protein-fortified frostings sold by Bowmar are substantially similar to the whey protein-fortified frostings purchased by Plaintiffs. (Bowmar sells two flavors of whey protein isolate-fortified frostings, cream cheese and confetti cake. These products can be found at https://bowmarnutrition.com/products/protein-frosting.) All of these frostings are fortified with the same ingredient, *i.e.*, whey protein isolate derived from cow's milk. The whey protein isolate used in these frostings has undergone the same pasteurizing, drying, and separation processes.

93.     All of the whey protein-fortified frostings sold by Bowmar are also substantially similar in terms of the grams of protein per serving stated on the products' labels and the Bowmar website: all purportedly contain 10 grams of protein per serving.

94.     All flavors of the whey protein-fortified frostings sold by Bowmar also contain similar ingredients besides the whey protein isolate, including preservatives and sweeteners such as palm oil, canola oil, and stevia leaf extract.

95.     All flavors of Bowmar's whey protein isolate-fortified frostings are sold at the same price of $9.99 for ten ounces or $29.99 for 32 ounces. (The prices actually paid by individual consumers are in some cases reduced by sales and other discounts.) That is, the price of these frostings is not driven in any way by the flavor of the frostings, but instead is driven by amount of frosting and by extension the amount of whey protein isolate in the product.

96.     All flavors of Bowmar's whey protein isolate-fortified frostings prominently claim to be "Protein Frosting Product"; use similar labelling; come in standard sizes; and present the grams-per-serving protein claims in the exact same way, as these examples drawn from the Bowmar website show:



97.     The only distinction between the various flavors of whey protein-fortified frostings sold by Bowmar is the inclusion of flavoring agents such as cream cheese powder, vanilla flavor, and other natural and artificial flavorings. These ingredients provide flavor but do not affect or otherwise impact the essential characteristic of these frostings, which is that they are fortified with whey protein isolate (which is nearly pure protein with the lactose removed and that sells at a

premium price) that is designed to replace meals for athletes and persons hoping to lose weight or build muscle.

98.     In addition, all of the whey protein-fortified frostings sold by Bowmar show consistent shortfalls in the stated grams of protein per serving. That is, Bowmar made substantially similar false statements about all of its whey protein-fortified frostings on those products' labels and on its website.

99.     Because of these similarities, the resolution of the asserted claims will be identical as between whey protein isolate-fortified frostings that Plaintiff purchased and those she did not.

100.     Because both "the products and alleged misrepresentations are substantially similar," Plaintiffs' claims related to the whey protein-fortified frostings that she purchased are typical of the claims available to all purchasers of Bowmar's whey protein-fortified frostings. As such, Plaintiffs are adequate class representatives for a putative class of purchasers of all of Bowmar's whey protein-fortified frostings, regardless of whether they each purchased every flavor of Bowmar's whey protein-fortified frostings.

**D.     Plaintiffs Purchased Whey Protein-Fortified Bars in Reliance on Bowmar's False Statements Concerning Grams of Protein Per Serving.**

101.     Through Bowmar's website, Plaintiffs purchased a number of Bowmar's whey protein-fortified bars, including but not limited to the bars listed below. Bowmar's whey protein-fortified bars are made with both whey protein concentrate and whey protein isolate.

102.     Plaintiff Stacie Bass purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Coffee Cake | 11/2/2019 | $3.00 | 20 |
| Protein Bar - Coffee Cake | 5/18/2019 | $34.99 | 20 |

103.    Plaintiff Caroline Culp purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Coffee Cake | 10/16/2020 | $3.00 | 20 |
| Protein Bar - Hot Chocolate Brownie | 10/16/2020 | $3.00 | 20 |
| Protein Bar - Iced Lemon | 10/16/2020 | $3.00 | 20 |
| Protein Bar - Iced Lemon | 8/4/2020 | $3.00 | 20 |

104.    Plaintiff Kristen DeStephano purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Cookie Dough | 6/25/2021 | $3.00 | 20 |
| Protein Bar - Cookies and Cream | 6/11/2021 | $3.00 | 20 |
| Protein Bar - Sugar Cookie | 5/7/2021 | $3.00 | 20 |

105.    Plaintiff Erin Leonard purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Sugar Cookie | 10/27/2019 | $59.98 | 20 |

106.    Plaintiff Shannon Maines purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Sugar Cookie | 7/24/2019 | $29.99 | 20 |

107.    Plaintiff Amanda Messer purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Hot Chocolate Brownie | 6/20/2021 | $29.99 | 20 |
| Protein Bar - Hot Chocolate Brownie | 5/14/2021 | $29.99 | 20 |
| Protein Bar - Hot Chocolate Brownie | 4/9/2021 | $34.99 | 20 |
| Protein Bar - Sugar Cookie | 4/9/2021 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 4/9/2021 | $29.99 | 20 |
| Protein Bar – Lemon | 2/2/2021 | $34.99 | 20 |
| Protein Bar - Sugar Cookie | 2/2/2021 | $29.99 | 20 |
| Protein Bar - Coffee Cake | 7/24/2020 | $3.00 | 20 |
| Protein Bar - Sugar Cookie | 7/24/2020 | $34.99 | 20 |
| Protein Bar - Cookie Dough | 2/14/2020 | $29.99 | 20 |
| Protein Bar - Cookie Dough | 11/28/2019 | $29.99 | 20 |
| Protein Bar - Cookie Dough | 11/28/2019 | $29.99 | 20 |
| Protein Bar - Cookie Dough | 11/13/2019 | $29.99 | 20 |
| Protein Bar - Cookie Dough | 10/6/2019 | $29.99 | 20 |
| Protein Bar - Cookies and Cream | 9/11/2019 | $29.99 | 20 |
| Protein Bar - Cookies and Cream | 9/11/2019 | $29.99 | 20 |
| Protein Bar - Cookie Dough | 7/22/2019 | $29.99 | 20 |
| Protein Bar - Cookie Dough | 7/22/2019 | $29.99 | 20 |

| | | | |
|---|---|---|---|
| Protein Bar - Cookie Dough | 7/22/2019 | $29.99 | 20 |
| Protein Bar - Cookies and Cream | 7/22/2019 | $29.99 | 20 |

108.    Plaintiff Aliza Mor purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Hot Chocolate Brownie | 11/27/2020 | $29.99 | 20 |
| Protein Bar - Hot Chocolate Brownie | 11/13/2020 | $29.99 | 20 |
| Protein Bar - Hot Chocolate Brownie | 10/6/2020 | $29.99 | 20 |
| Protein Bar - Hot Chocolate Brownie | 8/12/2020 | $29.99 | 20 |
| Protein Bar - Hot Chocolate Brownie | 4/3/2020 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 12/22/2019 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 12/22/2019 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 10/14/2019 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 10/14/2019 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 9/11/2019 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 9/11/2019 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 9/11/2019 | $29.99 | 20 |
| Protein Bar - Sugar Cookie | 8/25/2019 | $29.99 | 20 |
| Protein Bar - Cookie Dough | 12/27/2018 | $29.99 | 20 |
| Protein Bar - Cookie Dough | 11/23/2018 | $29.99 | 20 |

109.    Plaintiff Marissa Stewart purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Hot Chocolate Brownie | 4/9/2021 | $34.99 | 20 |
| Protein Bar - Sugar Cookie | 11/26/2020 | $34.99 | 20 |
| Protein Bar - Sugar Cookie | 11/26/2020 | $3.00 | 20 |
| Protein Bar - Sugar Cookie | 11/26/2020 | $3.00 | 20 |
| Protein Bar - Sugar Cookie | 10/20/2020 | $3.00 | 20 |

| Protein Bar - Iced Lemon | 10/9/2020 | $3.00 | 20 |
|---|---|---|---|
| Protein Bar - Iced Lemon | 8/21/2020 | $3.00 | 20 |
| Protein Bar - Iced Lemon | 7/12/2020 | $3.00 | 20 |
| Protein Bar – Lemon | 3/21/2020 | $34.99 | 20 |
| Protein Bar - Iced Lemon | 3/9/2020 | $2.70 | 20 |
| Protein Bar - Hot Chocolate Brownie | 3/6/2020 | $29.99 | 20 |
| Protein Bar - Iced Lemon | 3/6/2020 | $3.00 | 20 |
| Protein Bar - Sugar Cookie | 3/6/2020 | $29.99 | 20 |
| Protein Bar - Cookies and Cream | 2/26/2020 | $2.70 | 20 |
| Protein Bar - Cookies and Cream | 2/26/2020 | $2.70 | 20 |
| Protein Bar - Iced Lemon | 2/14/2020 | $3.00 | 20 |
| Protein Bar - Iced Lemon | 2/14/2020 | $3.00 | 20 |
| Protein Bar - Sugar Cookie | 2/14/2020 | $2.57 | 20 |
| Protein Bar - Sugar Cookie | 2/14/2020 | $2.57 | 20 |
| Protein Bar - Sugar Cookie | 2/14/2020 | $2.57 | 20 |
| Protein Bar - Sugar Cookie | 2/14/2020 | $2.57 | 20 |
| Protein Bar - Sugar Cookie | 2/14/2020 | $2.57 | 20 |
| Protein Bar - Sugar Cookie | 2/14/2020 | $3.00 | 20 |
| Protein Bar - Sugar Cookie | 2/14/2020 | $3.00 | 20 |
| Protein Bar - Iced Lemon | 12/11/2019 | $3.00 | 20 |
| Protein Bar - Sugar Cookie | 12/11/2019 | $3.00 | 20 |
| Protein Bar - Coffee Cake | 9/18/2019 | $34.99 | 20 |
| Protein Bar - Cookies and Cream | 9/11/2019 | $2.70 | 20 |

110.    Plaintiff Courtney Weymouth purchased the following flavors of bars from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Protein Bar - Coffee Cake | 11/2/2019 | $3.00 | 20 |
| Protein Bar - Coffee Cake | 5/18/2019 | $34.99 | 20 |

111.    Plaintiffs reviewed and relied upon the claims made by Bowmar about the protein content of its protein-fortified bars before purchasing them. Plaintiffs specifically reviewed Bowmar's claims on its website and the front and back labels of the products about the per-serving

protein content of its whey protein-fortified bars before making the decision to purchase. In making the decision to purchase, Plaintiffs relied on those label and website statements by Bowmar concerning the per-serving protein content of its whey protein-fortified bars.

112.    Given the Defendant's advertising material and other assurances, consumers including Plaintiffs reasonably understood Defendant's statements to mean that each serving of whey protein-fortified bars contained the grams of protein per serving that were advertised and represented and believed that these statements were true.

113.    In fact, each of Bowmar's statements concerning the grams of protein per serving in the whey protein-fortified bars on the products' labels and on the Bowmar website were false at the time they were made and at the time Plaintiffs purchased the bars. Testing by reputable national laboratories establishes that each whey protein-fortified bar manufactured by Bowmar, including but not limited to those purchased by Plaintiffs, have shortfalls of grams of protein per serving of at least 10 percent of the stated value, up to 33 percent.

114.    Consumers, including Plaintiffs, reasonably relied on Defendant's statements such that they would not have purchased Bowmar's whey protein-fortified bars if the truth about their protein content were known, or would have only been willing to pay a substantially reduced price for them had they known that Defendant's representations were false and misleading. Plaintiffs will be unable to rely on Bowmar's advertising or labeling in the future, and so will not purchase whey protein-fortified bars from Bowmar although they would like to.

115.    Plaintiffs suffered economic injury by Bowmar's deceptive conduct, and there is a causal nexus between Bowmar's deceptive conduct and Plaintiffs' injury as stated herein.

116.    Consumers including Plaintiffs did not become aware that Bowmar's labels and marketing materials misrepresented the protein content of its whey protein-fortified bars until mid-

2020, when reports began to appear on the Internet and in other publications that consumer advocates had tested the Products and discovered the protein shortages.

117.   Consumers such as Plaintiffs are under no obligation to investigate the nutrient content values stated on the Products' labels before making their purchase and are entitled to rely on those statements. Prior to the reports in mid-2020, therefore, consumers including Plaintiff could not have determined, simply by reviewing the Products' labels or consuming the Products, that the labels and marketing materials were false and deceptive.

118.   All flavors of the whey protein-fortified bars sold by Bowmar are substantially similar to the whey protein-fortified bars purchased by Plaintiffs. (Bowmar's full line of whey protein-fortified bars can be found at https://bowmarnutrition.com/products/protein-bars.) All of these protein bars are fortified with the same ingredients, *i.e.*, whey protein derived from cow's milk. The whey proteins used in these bars has all undergone the same pasteurizing, drying, and separation processes.

119.   All flavors of the whey protein-fortified bars sold by Bowmar are also substantially similar in terms of the grams of protein per serving stated on the products' labels and the Bowmar website: all purportedly contain 20 grams of protein per serving.

120.   All flavors of the whey protein-fortified bars sold by Bowmar also contain similar ingredients besides the whey protein, including preservatives and stabilizers such as palm oil, glycerin, chicory root fiber, and maltitol.

121.   All flavors of Bowmar's whey protein-fortified bars are sold at the same price of $3.00 for a single bar or $34.99 for a box of 12. (The prices actually paid by individual consumers are in some cases reduced by sales and other discounts.) That is, the price of these bars is not driven

in any way by the flavor of the bars, but instead is driven by the number of bars and by extension the amount of whey protein in the product.

122.   All flavors of Bowmar's whey protein-fortified bars use similar labelling; come in standard sizes; and present the grams-per-serving protein claims in the exact same way, as these examples drawn from the Bowmar website show:







123.    The only distinction between the various flavors of whey protein-fortified bars sold by Bowmar is the inclusion of flavoring agents such as cinnamon, cocoa, peanut butter, and other natural and artificial flavorings. These ingredients provide flavor but do not affect or otherwise impact the essential characteristic of these bars, which is that they are fortified with whey protein that is designed to replace meals for athletes and persons hoping to lose weight or build muscle.

124.    In addition, all of the whey protein-fortified bars sold by Bowmar show consistent shortfalls in the stated grams of protein per serving. That is, Bowmar made substantially similar false statements about all of its whey protein-fortified bars on those products' labels and on its website.

125.    Because of these similarities, the resolution of the asserted claims will be identical as between the purchased and unpurchased whey protein-fortified bars.

126.    Because both the products and alleged misrepresentations are substantially similar, Plaintiffs' claims related to the whey protein-fortified bars that they purchased are typical of the claims available to all purchasers of Bowmar's whey protein-fortified bars. As such, Plaintiffs are adequate class representatives for a putative class of purchasers of all of Bowmar's whey protein-fortified bars, regardless of whether each Plaintiff purchased every flavor of Bowmar's whey protein-fortified bars.

**E.    Plaintiff Purchases Whey Protein Isolate-Fortified Nut Spreads in Reliance on Bowmar's False Statements Concerning Grams of Protein Per Serving.**

127.    Through Bowmar's website, Plaintiffs purchased a number of Bowmar's protein-fortified nut spreads, including but not limited to the nut spreads listed below. These nut spreads are all fortified with whey protein isolate.

128.   Plaintiff Stacie Bass purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Bowmar Butter Almond Spread - Apple Pie | 7/24/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Apple Pie | 7/24/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Crunch Berry Cereal | 7/24/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Cinnamon Crunch Cereal | 6/27/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Crunch Berry Cereal | 6/27/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Lemon Cookie | 6/27/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Frosted Animal Cookie | 3/6/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 2/14/2020 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 2/14/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 12/14/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Frosted Animal Cookie | 12/14/2019 | $9.99 | 10 |
| Bowmar Butter Hazelnut Spread - Chocolate Hazelnut | 12/14/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 7/24/2019 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 7/24/2019 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 7/24/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 6/20/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 6/20/2019 | $9.99 | 10 |

| | | | |
|---|---|---|---|
| Bowmar Butter Cashew Spread - Cake Pop | 4/27/2019 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 4/27/2019 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 12/14/2018 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Halloween Egg | 10/26/2018 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Frosted Animal Cookie | 8/24/2018 | $8.99 | 10 |

129.    Plaintiff Caroline Culp purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Bowmar Butter Cashew Spread - Cookie Butter | 11/30/2020 | $9.99 | 10 |
| Bowmar Butter Hazelnut Spread - Chocolate Hazelnut | 11/30/2020 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 6/17/2020 | $9.99 | 10 |

130.    Plaintiff Kristen DeStephano purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Bowmar Butter Cashew - Cookie Butter | 6/25/2021 | $9.99 | 10 |
| Bowmar Butter Peanut Spread - Peanut Butter Pretzel | 5/7/2021 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Lemon Cookie | 4/23/2021 | $9.99 | 10 |

| Bowmar Butter Peanut Spread – Buckeyes | 4/23/2021 | $9.99 | 10 |
|---|---|---|---|
| Bowmar Butter Peanut Spread - Peanut Butter & Jelly | 4/23/2021 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Cinnamon Crunch Cereal | 4/9/2021 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 4/9/2021 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 3/5/2021 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 3/5/2021 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 3/5/2021 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 2/16/2021 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Lemon Cookie | 1/5/2021 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 1/5/2021 | $9.99 | 10 |

131.    Plaintiff Erin Leonard purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Bowmar Butter Almond Spread - Pumpkin Pie | 11/8/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Halloween Egg | 10/28/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Caramel Apple | 10/27/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread – Cornbread | 9/23/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 9/18/2019 | $9.99 | 10 |
| Bowmar Butter Hazelnut Spread - Chocolate Hazelnut | 9/18/2019 | $9.99 | 10 |

| Bowmar Butter Almond Spread - Lemon Cookie | 7/30/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Frosted Animal Cookie | 7/30/2019 | $9.99 | 10 |

132.    Plaintiff Deana Lozano purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE PURCHASED | PRICE PAID | GRAMS PROTEIN PER SERVING |
| --- | --- | --- | --- |
| Bowmar Butter Almond Spread - Crunch Berry Cereal | 7/15/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Lemon Cookie | 8/2/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Apple Pie | 8/2/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Crunch Berry Cereal | 8/2/2019 | $9.99 | 10 |
| Bowmar Butter Hazelnut Spread - Chocolate Hazelnut | 9/18/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Pecan Pie | 11/8/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Pumpkin Pie | 11/8/2019 | $9.99 | 10 |

133.    Plaintiff Shannon Maines purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
| --- | --- | --- | --- |
| Bowmar Butter Peanut Spread – Buckeyes | 7/31/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Cinnamon Crunch Cereal | 12/12/2019 | $9.99 | 10 |

| Bowmar Butter Almond Spread - Cinnamon Crunch Cereal | 12/12/2019 | $9.99 | 10 |
|---|---|---|---|
| Bowmar Butter Almond Spread - Crunch Berry Cereal | 11/8/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 11/8/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Crunch Berry Cereal | 9/11/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Fruity O Cereal | 9/11/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Lemon Cookie | 7/24/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Pecan Pie | 6/27/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Pumpkin Pie | 6/27/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Pecan Pie | 6/14/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread – Snickerdoodle | 6/14/2019 | $9.99 | 10 |

134.    Plaintiff Amanda Messer purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Bowmar Butter Cashew Spread - Cake Pop | 2/2/2021 | $8.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 9/4/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 8/23/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 8/14/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 7/24/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Frosted Animal Cookie | 7/24/2020 | $9.99 | 10 |

| | | | |
|---|---|---|---|
| Bowmar Butter Peanut Spread – Buckeyes | 6/18/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 5/20/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 5/20/2020 | $9.99 | 10 |
| Bowmar Butter Peanut Spread - Peanut Butter Sandwich Cookie | 5/20/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 5/13/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 3/10/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 3/10/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 3/10/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 3/10/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 2/14/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 2/14/2020 | $9.99 | 10 |

135. Plaintiff Aliza Mor purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| BowmaButter Hazelnut Spread - Chocolate Hazelnut | 2/14/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Lemon Cookie | 4/3/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 2/14/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 2/14/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 1/27/2020 | $9.99 | 10 |

| | | | |
|---|---|---|---|
| Bowmar Butter Cashew Spread - Fruity O Cereal | 1/27/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 12/11/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 12/11/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 11/20/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 11/8/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 10/14/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 10/14/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 10/11/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 10/11/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 9/18/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Halloween Egg | 9/18/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread – Snickerdoodle | 9/18/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 9/18/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 8/16/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 8/16/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 8/4/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 7/1/2019 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 7/1/2019 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 6/6/2019 | $9.99 | 10 |

136.    Plaintiff Marissa Stewart purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 5/6/2021 | $9.99 | 10 |
| Bowmar Butter Hazelnut Spread - Chocolate Hazelnut | 12/9/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 11/26/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 7/6/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 6/1/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 4/6/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 4/6/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Lemon Cookie | 3/21/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread – Cornbread | 3/6/2020 | $8.99 | 10 |
| Bowmar Butter Cashew Spread – Cornbread | 3/6/2020 | $8.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 2/26/2020 | $8.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 2/26/2020 | $8.54 | 10 |
| Bowmar Butter Cashew Spread – Cornbread | 2/14/2020 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Frosted Animal Cookie | 2/10/2020 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 1/8/2020 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 12/11/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 11/13/2019 | $8.99 | 10 |

| | | | |
|---|---|---|---|
| Bowmar Butter Cashew Spread - Cookie Butter | 11/13/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Sugar Cookie | 11/13/2019 | $8.99 | 10 |
| Bowmar Butter Cashew Spread - Halloween Egg | 11/8/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cake Pop | 11/5/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 9/18/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 9/11/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 8/23/2019 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Halloween Egg | 8/23/2019 | $9.99 | 10 |
| Bowmar Butter Almond Spread - Pumpkin Pie | 7/24/2019 | $9.99 | 10 |

137.    Plaintiff Mary Beth Tew purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Bowmar Butter Cashew Spread - Halloween Egg | 9/18/2020 | $9.99 | 10 |
| Bowmar Butter Hazelnut Spread - Chocolate Hazelnut | 9/18/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter (32 oz.) | 9/18/2020 | $29.99 | 10 |

138.    Plaintiff Courtney Weymouth purchased the following flavors of nut spreads from the Bowmar website. That website and the products' labels made the following claims regarding the grams of protein per serving in each product:

| PRODUCT | DATE | PRICE PAID | GRAMS PROTEIN PER SERVING |
|---|---|---|---|
| Bowmar Butter Almond Spread - Cinnamon Crunch Cereal | 10/19/2020 | $9.99 | 10 |
| Bowmar Butter Cashew Spread - Cookie Butter | 9/26/2020 | $9.99 | 10 |
| Bowmar Butter Peanut Spread - Buckeyes (32 oz.) | 9/26/2020 | $29.99 | 10 |
| Bowmar Butter Almond Spread - Pecan Pie | 8/20/2020 | $9.99 | 10 |
| Bowmar Butter Hazelnut Spread - Chocolate Hazelnut | 2/28/2020 | $9.99 | 10 |
| Bowmar Butter Peanut Spread – Buckeyes | 2/28/2020 | $9.99 | 10 |
| Bowmar Butter Peanut Spread - Buckeyes (32 oz.) | 12/12/2018 | $29.99 | 10 |
| Bowmar Butter Peanut Spread - Buckeyes (32 oz.) | 1/18/2018 | $29.99 | 10 |

139.   Plaintiffs reviewed and relied upon the claims made by Bowmar about the protein content of its nut spreads before purchasing them. Plaintiffs specifically reviewed Bowmar's claims on its website and the front and back labels of the products about the per-serving protein content of its nut spreads before making the decision to purchase. In making the decision to purchase, Plaintiffs relied on those label and website statements by Bowmar concerning the per-serving protein content of its nut spreads.

140.   Given the Defendant's advertising material and other assurances, consumers including Plaintiffs reasonably understood Defendant's statements to mean that each serving of nut spreads contained the grams of protein per serving that were advertised and represented and believed that these statements were true.

141.   In fact, each of Bowmar's statements concerning the grams of protein per serving in the whey protein-fortified nut spreads on the products' labels and on the Bowmar website were

false at the time they were made and at the time Plaintiffs purchased the nut spreads. Each nut spread manufactured by Bowmar, including but not limited to those purchased by Plaintiffs, have shortfalls of grams of protein per serving of at least 10 percent of the stated value, up to 30 percent.

142.    For example, testing by a reputable national laboratory shows that the Apple Pie Nut Spread, advertised on the front and back labels and on Bowmar's website as containing 10 grams of protein per serving, actually contained only 8.62 grams per serving. The Cake Pop Nut Spread, advertised on the front and back labels and on Bowmar's website as containing 10 grams of protein per serving, actually contained 7.81 grams. The Sugar Cookie Nut Spread, advertised on the front and back labels and on Bowmar's website as containing 10 grams of protein per serving, actually contained 7.47 grams. The Caramel Apple Nut Spread, advertised on the front and back labels and on Bowmar's website as containing 10 grams of protein per serving, actually contained 7.44 grams. The Halloween Egg Nut Spread, advertised on the front and back labels and on Bowmar's website as containing 10 grams of protein per serving, actually contained between 6.57 and 6.67 grams of protein.

143.    Consumers, including Plaintiffs, reasonably relied on Defendant's statements such that they would not have purchased Bowmar's whey protein isolate-fortified nut spreads if the truth about their protein content were known, or would have only been willing to pay a substantially reduced price for them. Plaintiffs will be unable to rely on Bowmar's advertising or labeling in the future, and so will not purchase whey protein isolate-fortified nut spreads from Bowmar although they would like to.

144.    Plaintiffs suffered economic injury by Bowmar's deceptive conduct, and there is a causal nexus between Bowmar's fraudulent and deceptive conduct and Plaintiffs' injury as stated herein.

145.    Consumers including Plaintiffs did not become aware that Bowmar's labels and marketing materials misrepresented the protein content of its whey protein isolate-fortified nut spreads until mid-2020, when reports began to appear on the Internet and in other publications that consumer advocates had tested the Products and discovered the protein shortages.

146.    Consumers such as Plaintiffs are under no obligation to investigate the nutrient content values stated on the Products' labels before making their purchase and are entitled to rely on those statements. Prior to the reports in mid-2020, therefore, consumers including Plaintiff could not have determined, simply by reviewing the Products' labels or consuming the Products, that the labels and marketing materials were false and deceptive.

147.    All of the whey protein-fortified nut spreads sold by Bowmar are substantially similar to the whey protein-fortified nut spreads purchased by Plaintiffs. All of these nut spreads are fortified with the same ingredient, *i.e.*, whey protein isolate derived from cow's milk. The whey protein isolate used in these nut spreads has all undergone the same pasteurizing, drying, and separation processes.

148.    All flavors of the whey protein-fortified nut spreads sold by Bowmar are also substantially similar in terms of the grams of protein per serving stated on the products' labels and the Bowmar website: all purportedly contain 10 grams of protein per serving.

149.    All flavors of the whey protein-fortified nut spreads sold by Bowmar also contain similar ingredients besides the whey protein isolate, including preservatives and sweeteners such as canola oil, palm oil, Xylitol, and stevia leaf extract.

150.    All flavors of Bowmar's whey protein isolate-fortified nut spreads are sold at the same price of $9.99 for ten ounces or $29.99 for 32 ounces. That is, the price of these nut spreads

is not driven in any way by the flavor of the nut spreads, but instead is driven by amount of nut spread and by extension the amount of whey protein isolate in the product.

151.    The Bowmar website focuses on the whey protein isolate content of these nut spreads, regardless of the nut flavoring, stating that "Bowmar Butter is a high protein, delicious snack that you'll be sure to love" and noting the purported protein content of each nut spread, regardless of the nut flavoring: "10g Protein Per Serving (made with Whey Protein Isolate)." *See* https://bowmarnutrition.com/products/bowmar-almond-butter?variant=32697263915054.    The Bowmar website also markets these nut spreads as single category of nut spread products, rather than as separate categories for each nut flavoring.

152.    All flavors of Bowmar's whey protein isolate-fortified nut spreads are sold under brand name "Bowmar Butter"; use similar labelling; come in standard sizes; and present the grams-per-serving protein claims in the exact same way, as these examples drawn from the Bowmar website show:

 






153.   The only distinction between the various flavors of whey protein-fortified nut spreads sold by Bowmar is the inclusion of flavoring agents such as peanut chips, almond chips, cashew chips, and other natural and artificial flavorings. These ingredients provide flavor but do not affect or otherwise impact the essential characteristic of these nut spreads, which is that they

are fortified with whey protein isolate (which is nearly pure protein with the lactose removed and which sells at a premium price) that is designed to replace meals for athletes and persons hoping to lose weight or build muscle.

154. In addition, all of the whey protein-fortified nut spreads sold by Bowmar show consistent shortfalls in the stated grams of protein per serving. That is, Bowmar made substantially similar false statements about all of its whey protein-fortified nut spreads on those products' labels and on its website.

155. Because of these similarities, the resolution of the asserted claims will be identical as between the flavors of whey protein isolate-fortified nut spreads that Plaintiffs purchased and those they did not.

156. Because both "the products and alleged misrepresentations are substantially similar," Plaintiffs' claims related to the whey protein-fortified nut spreads that they purchased are typical of the claims available to all purchasers of Bowmar's whey protein-fortified nut spreads. As such, Plaintiffs are adequate class representatives for a putative class of purchasers of all of Bowmar's whey protein-fortified nut spreads, regardless of whether they purchased every flavor of Bowmar's whey protein-fortified nut spreads.

**F.    Consumers Reasonably Relied on Bowmar's False Statement about the Protein Content of Its Whey Protein-Fortified Nut Spreads, Powders, and Frostings.**

157. Because Bowmar's nut spreads, powders, bars, and frostings are "Class I" foods (*i.e.*, "fortified or fabricated" foods), they must contain protein in amounts "at least equal to the value for that nutrient declared on the label." 21 C.F.R. § 101.9(g)(4)(i). That is, these variances from stated nutritional claims are unlawful under Federal law. In addition, the variances tend to move in one direction, *i.e.*, the labels of Bowmar's whey protein-fortified nut spreads, powders, bars, and frostings consistently overstate these products' actual protein content.

158.    Nutritional labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels. As the California Supreme Court stated in a case involving alleged violations of that state's consumer protection laws, "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

159.    Consumers, including Plaintiffs, reasonably understood Defendant's statements to mean that each serving of whey protein-fortified nut spreads, powders, bars, and frostings contained the grams of protein per serving that were advertised and represented and believed that these statements were true. In fact, these statements were false, as the products contained fewer grams per serving of protein than stated on the label.

160.    Consumers, including Plaintiffs, reasonably relied on Defendant's statements such that they would not have purchased Bowmar's whey protein-fortified nut spreads, powders, bars, and frostings if the truth about their protein nutrient content were known, or would have only been willing to pay a substantially reduced price for them had they known that Defendant's representations were false and misleading. Consumers, including Plaintiffs, will be unable to rely on Bowmar's advertising or labeling in the future, and so will not purchase whey protein-fortified nut spreads, powders, bars, and frostings from Bowmar even if they would like to.

161.    Consumers especially rely on the nutritional claims made by food product manufacturers such as Bowmar, which explicitly markets its protein-fortified products to persons who are eating a tailored diet in order to achieve specific nutritional, health, and fitness goals and who require specific amounts of protein as part of their eating plan.

## CLASS ACTION ALLEGATIONS

162.    Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of:

a) **Nationwide Class**: All persons within the United States who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2018.

b) **Wisconsin Subclass**: All persons within the state of Wisconsin who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2017.

c) **New Jersey Subclass**: All persons within the state of New Jersey who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2014.

d) **Kansas Subclass**: All persons within the state of Kansas who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings within three years prior to the filing of the Complaint in this matter.

e) **North Carolina Subclass**: All persons within the state of North Carolina who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2017.

f) **Virginia Subclass**: All persons within the state of Virginia who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings within four years after June 1, 2018.

g) **New York Subclass**: All persons within the state of New York who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings within three years prior to the filing of the Complaint in this matter.

h) **Illinois Subclass**: All persons within the state of Illinois who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2017.

i) **New Hampshire Subclass**: All persons within the state of New Hampshire who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2017.

j) **Florida Subclass**: All persons within the state of Florida who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2016.

k) **Texas Subclass**: All persons within the state of Texas who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2018.

l) **California Subclass**: All persons within the state of California who purchased the Defendant's whey protein-fortified nut spreads, powders, bars, and frostings after June 1, 2017.

163.    Excluded from the Class and Subclasses are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

164.    Plaintiffs reserve the right to alter the Class and Subclass definitions as necessary at any time to the full extent permitted by applicable law.

165.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as

individual Class members would use to prove those elements in individual actions alleging the same claims.

166.   **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiffs believe and aver there are thousands of Class members geographically dispersed throughout the United States.

167.   **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

    a)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for Bowmar's whey protein-fortified nut spreads, powders, bars and frostings are misleading and deceptive;

    b)    Whether a reasonable consumer would understand Defendant's claims about the protein content of its whey protein-fortified nut spreads, powders, bars, and frostings to indicate that they contained the stated amount of protein, and reasonably relied upon those representations;

    c)    Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class members;

    d)    the proper amount of damages and disgorgement or restitution;

    e)    the proper scope of injunctive relief; and

    f)    the proper amount of attorneys' fees.

168.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class. Similar or identical violations of

law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

169.     In short, these common questions of fact and law predominate over questions that affect only individual Class members.

170.     **Typicality – Rule 23(a)(3)**: Plaintiffs' claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

171.     Specifically, all Class members, including Plaintiffs, were harmed in the same way due to Bowmar's uniform misconduct described herein; all Class members suffered similar economic injury due to Bowmar's misrepresentations; and Plaintiffs seek the same relief as the Class members.

172.     There are no defenses available to Bowmar that are unique to the named Plaintiffs.

173.     **Adequacy of Representation – Rule 23(a)(4)**: Plaintiffs are fair and adequate representatives of the Class because Plaintiffs' interests do not conflict with the Class members' interests. Plaintiffs will prosecute this action vigorously and are highly motivated to seek redress against Bowmar.

174.     Furthermore, Plaintiffs have selected competent counsel who are experienced in class action and other complex litigation. Plaintiffs and Plaintiffs' counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

175.   **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a)   the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Bowmar's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b)   the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c)   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d)   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

176.   Unless the Class is certified, Bowmar will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

177.   Unless a class-wide injunction is issued, Bowmar will likely continue to advertise, market, promote, and sell its fortified protein products in an unlawful and misleading manner, as

SECOND AMENDED CLASS ACTION COMPLAINT

described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law.

178.    **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Bowmar's records and/or its agents' records of retail and online sales, as well as through public notice.

179.    Bowmar has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
## VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION
## FOR CONSUMER FRAUDS ACT, IOWA CODE § 714H.1 *ET SEQ.*
### (On Behalf of the Nationwide Class)

180.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

181.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Bowmar's actions as set forth above.

182.    Class members have suffered injury in fact and have lost money or property as a result of Bowmar's actions as set forth above.

183.    Plaintiffs and each member of the Class are "persons" and "consumers" within the meaning of Iowa Code § 714H.2.

184.    Plaintiffs have complied with the preclearance requirements of Iowa Code § 714H.7.

185.    As set forth herein, Bowmar knowingly represented, falsely, that its whey protein-fortified powders, frostings, bars, and nut spreads contained specific grams of protein per serving. Such false representations were unfair and deceptive acts or practices in violation of Iowa Code § 714H.3.

186.     As a direct and proximate result of this conduct, Plaintiffs and members of the Class expended money they would not otherwise have spent and received a lower quality product that did not provide the benefit they were assured it would provide.

187.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

188.     Iowa adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See K & W Elec., Inc. v. State*, 712 N.W.2d 107, 116 (Iowa 2006). Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

189.     Plaintiffs and the Class seek an order of this court enjoining Bowmar from continuing to engage in the acts set forth in this Complaint.

190.     Plaintiffs and the Class also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under Iowa Code § 714H.1 *et seq.* including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

## COUNT 2
## VIOLATION OF WISC. STAT. § 100.18 *ET SEQ.*
### (On Behalf of the Wisconsin Subclass)

191.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

192.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

193.     Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

194.     Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of Wisconsin Statutes § 100.18 *et seq*.

195.     Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

196.     As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

197.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

198.     Wisconsin adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See John Doe 1 v. Archdiocese of Milwaukee*, 303 Wis. 2d 34, 69 (2007). Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

199.     Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

200.    Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under Wisconsin Statutes § 100.18 *et seq.* including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

### COUNT 3
### VIOLATION OF N.J. STAT. ANN. § 56:8-1 *ET SEQ.*
### (On Behalf of the New Jersey Subclass)

201.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

202.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

203.    Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

204.    Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of N.J. Stat. Ann. § 56:8-1 *et seq.*

205.    Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

206.    As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

207.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

208.     New Jersey adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See Belmont Condominium Ass'n, Inc. v. Geibel*, 74 A.3d 10, 29 (N.J. Super. App. Div. 2013). Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

209.     Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

210.     Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under N.J. Stat. Ann. § 56:8-1 *et seq.* including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**COUNT 4**
**VIOLATION OF KAN. STAT. ANN. § 50-623 *ET SEQ.***
**(On Behalf of the Kansas Subclass)**

211.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

212.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.

213.     Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

214.     Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of Kan. Stat. Ann. § 50-623 *et seq.*

215.     Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

216.     As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

217.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

218.     Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

219.     Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under Kan. Stat. Ann. § 50-623 *et seq*. including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**COUNT 5**
**VIOLATION OF N.C. GEN. STAT. § 75-1.1 *ET SEQ.***
**(On Behalf of the North Carolina Subclass)**

220.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

221.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

222.     Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

223.     Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of N.C. Gen. Stat. § 75-1.1 *et seq*.

224.     Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

225.     As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

226.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

227.     North Carolina adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See Newton v. Barth*, 788 S.E.2d 653, 662–63 (N.C. App. 2016). Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

228.     Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

229.   Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under N.C. Gen. Stat. § 75-1.1 *et seq*. including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**COUNT 6**
**VIOLATION OF VA. CODE ANN. §§ 59.1-196 *ET SEQ*.**
**(On Behalf of the Virginia Subclass)**

230.   Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

231.   Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

232.   Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

233.   Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of Va. Code Ann. §§ 59.1-196 *et seq*.

234.   Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

235.   As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

236.   Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its

products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

237.     Virginia adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See* Va. Code § 8.01–249(1). Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

238.     Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

239.     Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under Va. Code Ann. §§ 59.1-196 *et seq*. including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

### COUNT 7
### VIOLATION OF N.Y. GEN. BUS. LAW § 349 *ET SEQ*. AND § 350 *ET SEQ*.
### (On Behalf of the New York Subclass)

240.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

241.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.

242.     Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

243.     Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of N.Y. Gen. Bus. Law § 349 *et seq*. and § 350 *et seq*.

244.    Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

245.    As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

246.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

247.    Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

248.    Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under N.Y. Gen. Bus. Law § 349 *et seq.* and § 350 *et seq.* including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

## COUNT 8
## VIOLATION OF 815 ILL. COMP. STAT. 505/1 *ET SEQ.*
### (On Behalf of the Illinois Subclass)

249.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

250.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

251.     Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

252.     Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of 815 Ill. Comp. Stat. 505/1 *et seq*.

253.     Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

254.     As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

255.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

256.     Illinois adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 83 (1995). Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

257.     Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

258.     Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under 815 Ill. Comp. Stat. 505/1 *et seq*. including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**COUNT 9**
**VIOLATION OF N.H. REV. STAT. ANN. § 358-A:1 *ET SEQ*.**
**(On Behalf of the New Hampshire Subclass)**

259.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

260.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

261.     Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

262.     Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of N.H. Rev. Stat. Ann. § 358-A:1 *et seq*.

263.     Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

264.     As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

265.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its

products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

266.    New Hampshire adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See* N.H. Stat. § 508:4. Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

267.    Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

268.    Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under N.H. Rev. Stat. Ann. § 358-A:1 *et seq*. including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**COUNT 10**
**VIOLATION OF § 501.201, FLA. STAT. *ET SEQ*.**
**(On Behalf of the Florida Subclass)**

269.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

270.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

271.    Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

272.    Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of § 501.201, Fla. Stat. *et seq*.

273.    Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

274.    As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

275.    Florida adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See* 35 Fla. Jur. 2d *Limitations and Laches* § 58; *Thomas v. Lopez*, 982 So.2d 64, 67 (Fla. 5th DCA 2008). Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

276.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

277.    Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

278.    Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under § 501.201, Fla. Stat. *et seq*. including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**COUNT 11**
**VIOLATION OF TEX. BUS. & COM. CODE ANN. § 17.41 *ET SEQ.***
**(On Behalf of the Texas Subclass)**

279.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

280.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.

281.    Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

282.    Defendant's actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of Tex. Bus. & Com. Code Ann. § 17.41 *et seq*.

283.    Defendant's business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material in light of the protein nutrient content representations that were made.

284.    As a direct and proximate result of this conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

285.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

286.    Texas adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a cause of action. *See Gibson v. Ellis*, 58 S.W.3d 818, 823 (Tex. App. 2001). Because of Bowmar's

conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

287.    Plaintiffs and the Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

288.    Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under Tex. Bus. & Com. Code Ann. § 17.41 *et seq*. including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**COUNT 12**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *ET SEQ*.**
**(On Behalf of the California Subclass)**

289.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative in the event it is determined through discovery that the California Subclass lacks an adequate legal remedy.

290.    As set forth herein, deceptive labelling about the protein content of the Products makes it impossible for persons using these products to accurately gauge their macros and follow high-protein eating plans. Because of the protein content shortfalls, consumers including Plaintiffs are unable to achieve the health, weight loss, fitness, and other goals that caused them to purchase Bowmar's whey protein-fortified products in the first place.

291.    This frustration of Plaintiffs' health, weight loss, and fitness goals because of the deceptive nature of the whey protein-fortified products' labeling and marketing claims has damaged Plaintiffs. Those damages are not adequately captured and compensated by use of a

"price premium" or other damages model, and thus Plaintiffs lack and adequate legal remedy for their injury.

292.     In addition or in the alternative, given the importance of accurate labeling in order to permit macro counting, Plaintiffs would not have purchased the whey protein-fortified products at issue had they known they could not rely on the accuracy of Bowmar's labeling and marketing claims. Accordingly, Plaintiffs are entitled to a restitutionary remedy to the extent permitted by the Unfair Competition Law. *See Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 899 (N.D. Cal. 2016).

293.     Plaintiffs and Subclass members have standing to pursue this claim as Plaintiffs has suffered injury in fact and has lost money or property as a result of Bowmar's actions as set forth above.

294.     Bowmar's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*. Bowmar's business practices, as alleged herein, are "unfair" because Defendant deceptively failed to reveal facts that are material in light of the protein nutrient content representations that were made.

295.     As a result of this "unfair" conduct, Plaintiffs and members of the Subclass expended money they would not otherwise have spent and/or received a lower quality product that did not provide the benefit they were assured it would provide.

296.     Defendant's actions as alleged in this Complaint additionally constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

297.     Defendant's business practices, as alleged herein, are "fraudulent" because it deceptively failed to reveal facts that are material in light of the protein nutrient content representations that were made.

298.     Defendant's actions as alleged in this Complaint additionally constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq.*

299.     Defendant's business practices, as alleged herein, are "unlawful" because it deceptively failed to reveal facts that are material in light of the protein nutrient content representations that were made, in contravention of binding legal requirements governing the accuracy of nutritional labelling.

300.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

301.     Pursuant to California Business and Professions Code Section 17203, Plaintiffs and the Subclass seek an order of this Court enjoining Bowmar from continuing to engage in unfair, fraudulent, and/or unlawful business practices and any other act prohibited by law, including those acts set forth in this Complaint.

302.     Plaintiffs and the Subclass also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiffs and the Subclass, along with all other relief allowable under Business and Professions Code Section 17200, *et seq.*

**COUNT 13**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *ET SEQ.***
**(On Behalf of the California Subclass)**

303.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative in the event it is determined through discovery that the California Subclass lacks an adequate legal remedy.

304.    Plaintiffs and the California Subclass members are "consumers" within the meaning of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

305.    The sale of Bowmar's whey protein-fortified nut spreads, powders, and frostings to Plaintiffs and Subclass members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

306.    The whey protein-fortified nut spreads, powders, and frostings purchased by Plaintiffs and California Subclass members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

307.    As alleged herein, Bowmar's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the protein nutrient content representations that were made by Bowmar on the labels and associated website and marketing materials of its whey protein-fortified nut spreads, powders, and frostings.

308.    Defendant's ongoing failure to provide material facts about its protein-fortified products on their labels and associated advertising material violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

    a)    Defendant's acts and practices constitute misrepresentations that its whey protein-fortified nut spreads, powders, and frostings have characteristics, benefits, or uses which they do not have;

b)      Defendant misrepresented that its whey protein-fortified nut spreads, powders, and frostings are of a particular standard, quality, and/or grade, when they are of another;

c)      Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

d)      Defendant's acts and practices fail to represent that transactions involving its whey protein-fortified nut spreads, powders, and frostings involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

e)      Defendant's acts and practices constitute representations that its whey protein-fortified nut spreads, powders, and frostings have been supplied in accordance with previous representations when they were not.

309.    By reason of the foregoing and for the reasons stated throughout this Second Amended Complaint, Plaintiffs and the Subclass have been irreparably harmed and lack an adequate legal remedy to compensate them fully for their injuries, entitling them to injunctive relief, disgorgement, and restitution.

310.    Pursuant to Cal. Civ. Code § 1782, Plaintiffs notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so.  Plaintiffs sent this notice by certified mail to Defendant's principal place of business, at least 30 days before the filing of this Complaint.

311.    California adheres to the "discovery rule," under which a cause of action does not accrue until the happening of an event likely to put the plaintiff on notice of the existence of a

cause of action. *See* Cal. Code Civ. Proc. § 338(d). Because of Bowmar's conduct as stated herein, under the discovery rule this cause of action did not accrue until on or about June 1, 2020.

312.    Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs and the California Subclass are entitled to recover actual damages sustained as a result of Bowmar's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

313.    Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs is entitled to enjoin publication of misleading and deceptive nutritional labels on Bowmar's whey protein-fortified nut spreads, powders, and frostings and to recover her reasonable attorneys' fees and costs.

**COUNT 15**
**VIOLATION OF CALIFORNIA BUSINESS &**
**PROFESSIONS CODE SECTION 17500 *ET SEQ.***
**(On Behalf of the California Subclass)**

314.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

315.    Plaintiffs have standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

316.    Subclass members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

317.    Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

318.    Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of whey protein-fortified nut spreads, powders, and frostings to customers like Plaintiff.

319.    Defendant's advertisements and marketing representations regarding the characteristics of its whey protein-fortified nut spreads, powders, and frostings were misleading and deceptive as set forth above.

320.    At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business and Professions Code Section 17500, *et seq*.

321.    By reason of the foregoing and for the reasons stated throughout this Second Amended Complaint, Plaintiffs and the Subclass have been irreparably harmed and lack an adequate legal remedy to compensate them fully for their injuries, entitling them to injunctive relief, disgorgement, and restitution, and all other relief allowable under California Business and Professions Code Section 17500, *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a)    that this action be certified as a class action; that Plaintiffs be appointed as class representatives for the Class and Subclasses; and that the undersigned be appointed as class counsel for the Class and Subclasses;

b)    that the Court enter an order requiring Defendant to bear the costs of notification to the Class and Subclasses;

c)    that the Court enter a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to violate the statutes and laws cited herein;

d)    that the Court enter an order enjoining Defendant to refrain from the acts and practices described herein;

e)      that the Court enter an order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiffs and all members of the Class and Subclasses to restore to the Plaintiffs and members of the Class and Subclasses all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or one constituting unfair competition;

f)      that the Court distribute monies via fluid recovery or *cy pres* where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;

g)      actual damages including but not limited to compensatory, incidental, consequential, exemplary, statutory, treble, and punitive damages in amounts the Court or jury will determine, in accordance with applicable law;

h)      equitable relief including restitution and injunctive relief, in accordance with applicable law;

i)      attorney's fees and court costs, including all recoverable interest;

j)      any other legal or equitable relief to which Plaintiff or the Class and Subclass members may be entitled.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

By: */s/ Eric S. Mail*
Eric S. Mail AT0011435
**PURYEAR LAW P.C.**
3719 Bridge Ave, Suite 6
Davenport, IA 52807
(P): 563.265.8344
(F): 866.415.5032
mail@puryearlaw.com
eric@puryearlaw.com

/s/ *Charles C. Weller*
Charles C. Weller (*pro hac vice*)
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

*Attorneys for Plaintiffs*

February 14, 2022

SECOND AMENDED CLASS ACTION COMPLAINT